UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUL 1 0 2009

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| LARRY WILKERSON, | ) |
| | ) |
| Defendant. | ) |

Cr. No. 00-0157-15 (TFH)

## MEMORANDUM OPINION

Pending before the Court is defendant Larry Wilkerson's Motion for a New Trial Based on Violation of Defendant's Sixth Amendment Right to a Unanimous Jury Based on the Court's Improper Removal of Juror Number 0552 During Deliberations ("Improper Removal Motion") (Docket No. 2195). Finding that the removal of Juror Number 0552 from the deliberating jury was not improper, the Court will deny the motion.

## BACKGROUND

After a two-month long trial, on September 22, 2004, a jury found Wilkerson guilty on nine counts related to narcotics conspiracy, RICO conspiracy, and the murders of Marvin Goodman, Christopher Burton, and Scott Downing.[1] Wilkerson filed numerous post-trial motions attacking the validity of the proceeding, of which the Improper Removal Motion is one. Because of these pending post-trial motions, Wilkerson has yet to be sentenced.

---

[1] The jury found Wilkerson not guilty of two counts related to the murder of a fourth person, Darrell Henson.

1

The Improper Removal Motion concerns the Court's dismissal of Juror 0552[2] from the jury in the midst of deliberations.  The jury commenced deliberations on the afternoon of Wednesday, September 8, 2004, and continued to deliberate on the ensuing Thursday, Monday, and Tuesday.  On the morning of Wednesday, September 15, 2004, the Court received a handwritten note from Juror 0552 bearing the time of 9:30 a.m., which read as follows:

> I, juror number 0552, request that I be replaced with an alternate in the deliberation of Larry Wilkerson.  I strongly disagree with the laws and instructions that govern this deliberation, and I cannot follow them.  Because I feel so strongly about this, it may affect my decisions in this matter.  In other words a possible bias decision [sic].  In addition, I am experiencing emotional and mental distress.  For this alone, I felt it was enough for me to ask for a replacement.  I would not be asking for this request, if I didn't feel that this was a serious issue.  Please take this request under strong consideration.  I apologize, for the delay in this request, but if it is at all possible please remove me from this deliberation.  Sincerely, Juror 0552

Improper Removal Motion, Attach. B (copy of the note).

The Court consulted with counsel about how to proceed and reviewed the leading case law, in particular *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987) and *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997) (interpreting and following *Brown*).  *See* Trial Tr. at 2-25, Sept. 15, 2004.  Drawing on these precedents, the Court recognized that this situation required it to strike a delicate balance between two duties: (1) not to intrude upon the process of jury deliberations, and (2) to discharge a juror who engages in misconduct such as not following the law. *See Thomas*, 116 F.3d at 618 ("Once a jury retires to the deliberation room, the presiding judge's duty to dismiss jurors for misconduct comes into conflict with a duty that is equally, if not more, important—safeguarding the secrecy of jury deliberations.")  Over the government's

---

[2] The 0552 designation represents the juror's number from the venire.  Within the empaneled jury, this juror's number was 9.

objection, the Court conducted a further voir dire of Juror 0552 to confirm her statements in the

note. Over defense counsel's opposition, the Court did not ask the juror directly whether her

discomfort reflected doubts about the sufficiency of the government's evidence. The colloquy

between the Court and Juror 0552 is reproduced in full below:

> COURT: Good morning, ma'am. Thank you for coming in. I appreciate it. For the record I need to identify who you are. I need to ask a couple of questions of your note. You're Juror 0552?
>
> JUROR: Yes.
>
> COURT: Ma'am, you wrote me a note this morning?
>
> JUROR: Yes.
>
> COURT: All right. Thank you. In your note I just want to review it with you and ask you a couple of questions about it. And I cannot go into your deliberations or what's going on in the jury room. You understand that? I don't want to hear anything about the deliberations or intrude in any way, but because of your note I need to ask you a couple of questions. All right. Okay. You said that you request to be replaced because you strongly disagree with the laws and instructions that govern this deliberation and you cannot follow them. In other words, I just need to ask you when you make that statement you mean the instructions and the law that I've given to you in this case we're talking about?
>
> JUROR: Yes.
>
> COURT: And although you took an oath to follow the instructions and the law you feel you cannot do so; is that fair?
>
> JUROR: Yes.
>
> COURT: And you were very fair about it. You wrote I feel so strongly about this it may affect my decisions in this matter. In other words, I may have possible bias decision. And because you're disagreeing with the law, is that what you're saying?
>
> JUROR: Yes.
>
> COURT: You also said you're feeling emotional and mental distress. You felt that alone was enough to ask for replacement. Is that just because of deliberations you

mean?  I don't want to get – –

JUROR: The whole thing.

COURT: The whole case?

JUROR: The whole case.

COURT: Let me ask you about the law.  You've read the instructions.  You've heard my law we're talking about.  And it's your opinion you cannot follow the law and apply it in this case?  Is that what you're saying?

JUROR: I cannot follow it because I do not agree with it.

COURT: You do not agree with the law?

JUROR: No.

COURT: I don't want to get in your deliberations now.

JUROR: Okay.

COURT: You just don't agree with the law?

JUROR: Uh-uh.

COURT: And you came to this belief after seriously considering you say here that you didn't, you know, you wouldn't ask for this but you didn't feel you felt it was such a serious issue?

JUROR: It is serious.  We're dealing with somebody's life.

COURT: And under the law that I've given you you disagree with that?  Is that what you're saying?

JUROR: Yes.

COURT: All right.  Let me ask you to step back and not talk to the other jurors about your situation and talk with counsel for a minute.  Can I do that for a minute, please, ma'am.  Thank you very much.

Trial Tr. at 26-28.  After further discussion with counsel, *id.* at 28-33, the Court decided to

dismiss Juror 0552 pursuant to FED. R. CRIM. P. 23(b)(3) based on her representation, both in the note and during the voir dire, that she strongly disagreed with the laws governing the deliberation and could not follow them. *Id.* at 36-38.

Wilkerson claims that the Court erred in four ways. Improper Removal Mot. at 2. First, he argues procedurally that *Brown* required the Court to ask Juror 0552 if she harbored concerns about the evidence. Second, Wilkerson asserts that the Court applied an incorrect legal standard to dismiss Juror 0552, as it found that there was no "substantial possibility" that the juror harbored evidentiary concerns even though *Brown* commands an "any possibility" standard. Third, Wilkerson contends on the merits that the record was ambiguous as to whether Juror 0552 had concerns about the evidence, so the Court was wrong to remove her regardless of her perceived intent to disregard the law. Fourth, Wilkerson submits that, leaving aside concerns about the evidence and assuming *arguendo* that Juror 0552 intended to disregard the law, the prospect of jury nullification is not a proper basis to dismiss a juror under Rule 23(b).

Based on these alleged errors, Wilkerson argues that the Court wrongly dismissed Juror 0552 in violation of his right to a unanimous verdict. *See United States v. Essex*, 734 F.2d 832, 840-41 (D.C. Cir. 1984) (finding that right to unanimous verdict derives from Sixth Amendment and Federal Rules of Criminal Procedure). As his remedy, Wilkerson seeks a new trial. In the alternative, he requests that the Court summon Juror 0552 for another voir dire to explore more conclusively whether evidentiary concerns motivated her request to be discharged.

## ANALYSIS

FED. R. CRIM. P. 23(b)(3) provides that "[a]fter the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if

the court finds good cause to excuse a juror."[3]  The D.C. Circuit, interpreting this Rule's "good

cause" requirement,[4] has held that "a court may not dismiss a juror during deliberations if the

request for discharge stems from doubts the juror harbors about the sufficiency of the

government's evidence." *Brown*, 823 F.2d at 596.  "If a court could discharge a juror on the

basis of such a request, then the right to a unanimous verdict would be illusory." *Id.*; *see also*

*Thomas*, 116 F.3d at 621 ("To remove a juror because he is unpersuaded by the Government's

case is to deny the defendant his right to a unanimous verdict.").

While this rule provides a bright line conceptually, its application in practice is not

always clear-cut:

> [A court] must, however, confront the problem that the reasons underlying a request
> for a dismissal will often be unclear. . . . [A] court may not delve deeply into a juror's
> motivations because it may not intrude on the secrecy of the jury's deliberations.
> Thus, unless the initial request for dismissal is transparent, the court will likely prove
> unable to establish conclusively the reasons underlying it.   Given these
> circumstances, . . . if the record evidence discloses any possibility that the request to
> discharge stems from the juror's view of the sufficiency of the government's
> evidence, the court must deny the request.

*Brown*, 823 F.2d at 596.

In *Brown*, the D.C. Circuit held that the district court erred in dismissing a juror because

the record indicated a "substantial possibility" that the juror's discharge request stemmed from a

---

[3]  In this case, the Court granted Wilkerson's unopposed request to maintain a twelve-member deliberating jury by replacing Juror 0552 with an alternate juror, pursuant to FED. R. CRIM. P. 24(c)(3).

[4]  At the time *Brown* was decided, Rule 23(b) used the term "just cause" rather than "good cause." The distinction is immaterial. The commentary to the rule states that the wording was changed only because "good cause" is a "more familiar term" than "just cause," and that "[n]o change in substance is intended." *See* FED. R. CRIM. P. 23 Advisory Comm. notes to 2002 Amendments.

belief that the evidence offered at trial was inadequate to support a conviction. *Id.* at 596. The

juror in that case sent out a note saying that he was "not able to discharge [his] duties as a

member of this jury." *Id.* at 594. Upon questioning by the trial judge, however, the juror stated

that his difficulty was with "the way [the act is] written and the way the evidence has been

presented." *Id.* The juror noted further that "[i]f the evidence was presented in a fashion in

which the law is written, then, maybe, I would be able to discharge my duties." *Id.* The Court of

Appeals found that these statements evinced a possibility that the juror wished to quit

deliberations because of evidentiary concerns, and that this ambiguity should have blocked the

district court from excusing the juror. *Id.* at 597. Accordingly, the Court of Appeals remanded

for a new trial.

With this legal framework in mind, the Court below addresses each of Wilkerson's four

arguments for why the dismissal of Juror 0552 was improper.

## I. Whether the Court was required to ask Juror 0552 if she harbored concerns about the sufficiency of the government's evidence

After receiving Juror 0552's note, the Court consulted with counsel before conducting the

voir dire. During that consultation, the following exchange took place between defense counsel

and the Court:

> COUNSEL: In light of the Second Circuit's decision that Your Honor was just reading [*Thomas*] I think there should be at least one question about whether she has some difficulty with whether the evidence is sufficient.

> COURT: I don't think I can do that. If she wants to volunteer that's one thing. The way it reads I can't do that.

Trial Tr. at 25. In the subsequent colloquy with Juror 0552, the Court did not ask if she had any

difficulty with the sufficiency of the evidence. After the colloquy and before the Court ruled,

defense counsel again sought unsuccessfully to have the Court ask Juror 0552 whether she had evidentiary concerns. *Id.* at 29-33.

Revisiting this point, Wilkerson now argues that the Court was required to ask Juror 0552 whether she harbored concerns about the sufficiency of the government's evidence. Wilkerson stresses that he did not and does not contend that the Court should inquire into the substance of the juror's views on the merits of the case; rather, Wilkerson contends that a question could have been propounded to elicit a simple "yes" or "no" answer as to whether she had concerns about the evidence. Wilkerson argues that such a question was required particularly in light of Juror 0552's statement that she was experiencing "emotional and mental distress" stemming from "the whole case." According to Wilkerson, this representation possibly signaled that Juror 0552 was struggling with the evidence,[5] triggering a duty for the Court to inquire further to confirm whether she was troubled by the evidence in the case.

The Court rejects the proposition that it was required to ask Juror 0552 if she harbored concerns about the sufficiency of the evidence. At most, *Brown* and *Thomas* indicate that a court *may* ask such a question; nowhere do those cases suggest that a court *must*. To the contrary, courts generally enjoy wide latitude in determining the type of investigation to conduct when allegations of juror misconduct arise. *See Essex*, 734 F.2d at 845 ("The trial court has a great deal of discretion in deciding to excuse a juror for cause. An appellate court ordinarily will not second-guess such a determination . . . ."); *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006) ("[W]e emphasize that a district court, based on its unique perspective at the scene, is in a

---

[5] The Court disagrees with this contention. Notwithstanding defense counsel's wishful speculation, *see, e.g.*, Def.'s Mem. of P. & A. at 7 & n.7, the record before the Court indicated no appreciable possibility that Juror 0552 harbored concerns about the evidence. *See infra* Part III.

far superior position than this Court to appropriately consider allegations of juror misconduct, both during trial and during deliberations."); *United States v. Baker*, 262 F.3d 124, 129 (2d Cir. 2001) ("[W]e have emphasized that the questions whether and to what extent a juror should be questioned regarding the circumstances of a need to be excused are also within the trial judge's sound discretion." (internal quotation and citation omitted)); *United States v. Register*, 182 F.3d 820, 840 (11th Cir. 1999) ("[T]he court also enjoys substantial discretion in choosing the investigative procedure to be used in checking for juror misconduct." (internal quotation omitted)); *United States v. Sears*, 663 F.2d 896, 900 (9th Cir. 1981) ("The District Court has broad discretion to decide whether to conduct an evidentiary hearing into alleged juror misconduct, and to determine its extent and nature."). Nothing in *Thomas* or *Brown* indicates that this widely accepted rule trusting in a court's sound discretion has been supplanted by an opposite rule directing exactly what questions a court must ask.

Wilkerson's argument demonstrates the folly of attempting "to leap a chasm in two jumps," to borrow a phrase from British Prime Minister David Lloyd George (1863-1945). Wilkerson makes much of the statement in *Brown* that a court "may not delve deeply into a juror's motivations." 823 F.2d at 596. While it could follow from that statement that a court *may* delve *shallowly*, Wilkerson's reading further jumps to the conclusion that a court *must* delve shallowly. Yet, it hardly follows from the statement in *Brown* that a court must delve at all.

To the contrary, the dominant thrust of the reasoning of *Thomas*, in which the Second Circuit elaborated on *Brown*, is that inquiries into a juror's views on the merits of a case are highly disfavored. As between competing values of preserving the secrecy of jury deliberations and preventing jurors from subverting the law, the secrecy of deliberations is paramount:

> Where the duty and authority to prevent defiant disregard of the law or evidence comes into conflict with the principle of secret jury deliberations, we are compelled to err in favor of the lesser of two evils—protecting the secrecy of jury deliberations . . . . To open the door to the deliberation room any more widely and provide opportunities for broad-ranging judicial inquisitions into the thought processes of jurors would, in our view, destroy the jury system itself.

*Thomas*, 116 F.3d at 623; *see also id.* at 620 ("The mental processes of a deliberating juror with respect to the merits of the case at hand must remain largely beyond examination and second-guessing, shielded from scrutiny by the court as much as from the eyes and ears of the parties and the public."). Following this precept, the Court in its discretion endeavored to preserve the sanctity of Juror 0552's thought process in this case. Accordingly, it was not error to decline any inquiry into the juror's views of the evidence.

## II. Whether the Court applied an incorrect legal standard to dismiss Juror 0552

Wilkerson argues that, in deciding to dismiss Juror 0552, the Court did not apply the controlling legal standard prescribed in *Brown*: "[I]f the record evidence discloses *any possibility* that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request." 823 F.2d at 596 (emphasis added). According to Wilkerson, rather than this "any possibility" standard, the Court erroneously applied a standard requiring a "substantial possibility." Wilkerson bases his conclusion on part of the oral opinion the Court delivered in dismissing Juror 0552:

> [H]er only expression is she cannot follow the law and she disagrees with it and she reaffirmed that orally. She was concerned about the case and concerned there was a lot at stake and she said a life at stake. That does not indicate to me any *substantial possibility* [of concern about the sufficiency of the evidence] using the language of the *Brown* decision or in the *Thomas* case.

Trial Tr. at 38 (emphasis added). That language did appear in *Brown*, where the D.C. Circuit

found a "substantial possibility" that the juror "requested to be discharged because he believed

that the evidence offered at trial was inadequate to support a conviction."  823 F.2d at 596.  The

*Thomas* opinion, however, nowhere uses the phrase "substantial possibility."

As it stated in open court while reviewing the case law, *see* Trial Tr. at 22, the Court

rejects a legal distinction between the "any possibility" and "substantial possibility"

formulations.  As the Eleventh Circuit has explained, these nominally different formulations

must be treated as expressions of the same standard:  "In *United States v. Brown*, the D.C. Circuit

used both the term 'any possibility' and the term 'substantial possibility.'  We believe the terms

are interchangeable, both meaning a tangible possibility, not just a speculative hope." *United*

*States v. Abbell*, 271 F.3d 1286, 1302 n.14 (11th Cir. 2001) (per curiam).

This reading is necessary because, if taken literally, the "any possibility" standard

announced in *Brown* would impose the unworkable requirement of proving a negative beyond

the slightest scintilla of wildly speculative possibility.  The Ninth Circuit, in adopting a

"reasonable possibility" standard, recognized the impracticality of a true "any possibility"

approach:

> We emphasize that the standard is any *reasonable* possibility, not any possibility
> whatever. . . . [T]o prohibit juror dismissal unless there is no possibility at all that the
> juror was dismissed because of her position on the merits may be to prohibit
> dismissal in all cases.  We believe that the standard of "reasonable possibility" in this
> context, like the standard of "reasonable doubt" in the criminal law generally, is a
> threshold at once appropriately high and conceivably attained.

*United States v. Symington*, 195 F.3d 1080, 1087 n.5 (9th Cir. 1999) (internal quotation omitted).

As invoked in *Brown*, "any possibility" must be read to refer to some kind of qualified

possibility.  The Third Circuit, also adopting a "reasonable possibility" standard, reached the

11

same conclusion in its review of the approaches that various Circuits have taken:

> While there is a slight difference in the standards as expressed by the D.C. and Second Circuits ["any possibility"] as compared to the Ninth and Eleventh Circuits ["reasonable possibility" and "substantial possibility"], we believe that the difference is one of clarification and not disagreement.  To the extent that there is a difference, we believe that the articulation of the Ninth and Eleventh Circuits is superior.  That standard will allow us to avoid abstract "anything is possible" arguments, provide district courts with some leeway in handling difficult juror issues, and protect each party's right to receive a verdict rendered by a jury that follows the law.  At the same time, the standard is by no means lax: it corresponds with the burden for establishing guilt in a criminal trial, so we are confident that it will adequately ensure that jurors are not discharged simply because they are unimpressed by the evidence presented.

*United States v. Kemp*, 500 F.3d 257, 304 (3d Cir. 2007).

It would be helpful for the Court of Appeals to clarify the applicable standard in this Circuit.  The Court used "substantial possibility" in its oral opinion because that language appeared in *Brown*.[6]  Several other qualifiers—reasonable, appreciable, realistic, genuine, credible, tangible—could be employed.  Whatever the magic word, the Court is confident that it correctly applied a standard of qualified possibility and that Wilkerson's argument for a literal "any possibility" standard must fail.

### III. Whether the record was ambiguous as to Juror 0552's concerns about the evidence and therefore the Court was wrong to discharge her

Challenging the Court's ruling on the merits, Wilkerson asserts that the record was ambiguous as to whether Juror 0552 harbored concerns about the sufficiency of the government's evidence.  In light of this alleged ambiguity, Wilkerson argues that, notwithstanding what the Court perceived as Juror 0552's intent to disregard the law, *Brown* prohibited her dismissal from the jury.

---

[6]  The Court also stated that it was "satisfied beyond a reasonable doubt" of its conclusion.  Trial Tr. at 38.

The Court rejects Wilkerson's premise that the record exhibits ambiguity.  As the Court found when ruling from the bench, the evidence is clear that Juror 0552's request to be dismissed stemmed from her inability to follow the governing law, not from any evidentiary concerns: "I'm satisfied beyond a reasonable doubt as a judge of her credibility from her statements in the letter and her statements on the record that she will not follow the law, that she strongly disagrees with them and she'll not follow them contrary to her oath of office . . . ."  Trial Tr. at 38.  Indeed, the Court had asked Juror 0552 seven times, in multiple ways, whether she was unable to follow the law as instructed, and each time she confirmed that she could not.  *Id.* at 26-28.  The Court found that, in her communications, Juror 0552 made no "reference whatsoever to any evidentiary concerns or the strength of the government's evidence or the dissatisfaction with the government's presentation of the case making her concern[ed] about proof beyond a reasonable doubt . . . ."  *Id.* at 38.  To the contrary, the Court found that both her written and oral statements confirmed repeatedly that her discharge request was motivated by disagreement with the law: "[H]er only expression is that she cannot follow the law and she disagrees with it and she reaffirmed that orally."  *Id.*

The Court's factual findings are entitled to substantial deference.  *See United States v. Taylor*, 487 U.S. 326, 337 (1988) ("Factual findings of a district court are, of course, entitled to substantial deference and will be reversed only for clear error.").  Moreover, Juror 0552's clear-cut statements contrast starkly with the record in *Brown*, where the juror traced his difficulty to "the way [the act is] written and the way the evidence has been presented," and then suggested that "[i]f the evidence was presented in a fashion in which the law is written, then, maybe, I would be able to discharge my duties."  *Brown*, 823 F.2d at 594.

Despite such a straightforward record, Wilkerson attempts to divine ambiguity from Juror 0552's statement that she was experiencing "emotional and mental distress" stemming from "the whole case." In Wilkerson's view, this representation possibly signaled that Juror 0552 was concerned about the sufficiency of the evidence, as "the whole case" would include the evidence in the case.

Wilkerson's reading is simply not credible in light of all the circumstances. Two other considerations explain what Juror 0552 meant about "the whole case" causing her distress. First, her statement later in the colloquy—"It is serious. We're dealing with somebody's life." Trial Tr. at 28—indicates that what distressed her was the stakes involved in the whole case, not the sufficiency of the evidence. Second, the grueling length and complexity of Wilkerson's trial, as described by the Court in its oral opinion, *see* Trial Tr. at 36, further explains how "the whole case" caused the juror distress. On that second point, it is instructive to note that Juror 0552's reference to "the whole case" was prompted only in response to the Court's inquiry into the health concerns mentioned in her note, not during any discussion of the merits of the case. Specifically, the Court asked whether her distress was related to the jury's deliberations:

> COURT: You also said you're feeling emotional and mental distress. You felt that alone was enough to ask for replacement. Is that just because of deliberations you mean? I don't want to get – –
>
> JUROR: The whole thing.
>
> COURT: The whole case?
>
> JUROR: The whole case.

*Id.* at 27. What Juror 0552 was trying to communicate was that her distress was not a product of the deliberations specifically, but of the entire, exhausting proceeding.

14

Indeed, Juror 0552's clarification that her distress was not triggered in particular by the deliberations rebuts an inference that she was struggling with the sufficiency of the evidence. Deliberations—the stage when the jury finally evaluates the evidence in light of the controlling law—are precisely when a juror's dissatisfaction with the sufficiency of the evidence would manifest itself most clearly, yet that phase of the case was not especially distressing to Juror 0552.

Finally, Juror 0552's implication that the deliberations were not a particular cause of distress undercuts Wilkerson's conjecturing, *see* Def.'s Mem. of P. & A. at 7 & n.7, 17, that she was a holdout juror of the sort that *Brown* and *Thomas* seek to protect from being bullied into seeking a discharge. *See Thomas*, 116 F.3d at 622 (explaining that *Brown* rule guards against wrongful removal in scenario where group of jurors favoring conviction unfairly characterizes a lone holdout juror as unwilling to follow the law). Wilkerson's supposition of a bullied juror is also belied by the absence, in over three days of deliberation, of any note or other indication from the jury demonstrating that tension existed among the jurors. *See* Trial Tr. at 36. Juror 0552 never hinted in any way of such pressure.

In sum, Juror 0552's statements very clearly identify her motivation for seeking to be discharged from the jury: she disagreed with the governing law and felt herself unable to follow it. Contrary to Wilkerson's suggestions about why "the whole case" would have caused Juror 0552 "emotional and mental distress," the record viewed in light of all the circumstances exhibits no substantial (or reasonable, appreciable, realistic, genuine, credible, or tangible) possibility that Juror 0552's request for discharge stemmed from doubts about the sufficiency of the government's evidence.

15

**IV. Whether a juror's intent to disregard the law is a proper basis under Rule 23(b) to dismiss that juror**

In *Brown*, the D.C. Circuit "specifically [left] open the question . . . whether a court may constitutionally apply Rule 23(b) to discharge a juror for refusing to apply the relevant substantive law." 823 F.2d at 597. Taking up this question, Wilkerson contends that, even if Juror 0552 plainly intended to disregard the law, such jury nullification is not a proper basis to dismiss a juror under Rule 23(b). He offers minimal substantive discussion in support of this proposition. *See* Def.'s Mem. of P. & A. at 13 n.9.

This Court now answers that Rule 23(b) permits discharge of a juror who refuses to apply the governing the law. Facing the same issue in *Thomas*, the Second Circuit, with Judge Cabranes writing, fulminated against the theory that Wilkerson advances:

> We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent. Accordingly, we conclude that a juror who intends to nullify the applicable law is no less subject to dismissal than is a juror who disregards the court's instructions due to an event or relationship that renders him biased or otherwise unable to render a fair and impartial verdict.

116 F.3d at 614. The Second Circuit continued that:

> Inasmuch as no juror has a right to engage in nullification—and, on the contrary, is in violation of a juror's sworn duty to follow the law as instructed by the court—trial courts have the duty to forestall or prevent such conduct, whether by firm instruction or admonition or, where it does not interfere with guaranteed rights or the need to protect the secrecy of jury deliberations, by dismissal of an offending juror from the venire or the jury.

*Id.* at 616 (internal reference omitted). Addressing precisely the point that Wilkerson raises, the Second Circuit held that "a juror who is determined to ignore his duty, who refuses to follow the court's instructions on the law and who thus threatens to undermine the impartial determination

16

of justice based on law, is subject to dismissal during the course of deliberations under Rule 23(b)." *Id.* at 617 (internal quotation omitted); *accord Kemp*, 500 F.3d at 303 ("[C]ourts agree that a district court has the authority to dismiss a juror—even during deliberations—if that juror refuses to apply the law or to follow the court's instructions." (internal quotation omitted)); *Abbell*, 271 F.3d at 1302 ("'Just cause' exists to dismiss a juror when that juror refuses to apply the law or to follow the court's instructions."). The Court agrees with the Second, Third, and Eleventh Circuits, and rejects Wilkerson's claim.

## CONCLUSION

The Court finds no merit in Wilkerson's arguments that the dismissal of Juror 0552 was improper. It was not necessary to ask the juror whether she harbored concerns about the sufficiency of the evidence, nor did the record contain ambiguity on that point. The Court applied the correct legal standard in reaching its decision to discharge the juror, and Rule 23(b) permitted it because she had expressed her intent to disregard the law. Because all of Wilkerson's arguments fail, the Court will deny his motion.

An order accompanies this Memorandum Opinion.

July 9th, 2009

Thomas F. Hogan
U.S. District Judge